UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SCHWEGMANN FAMILY TRUST NO. 2                CIVIL ACTION

VERSUS                                        NO. 06-2478

TOYS "R" US, INC., ET AL                      SECTION "T"

### ORDER AND REASONS

Before the Court is a Motion for Summary Judgment filed on behalf of Schwegmann Family Trust No. 2 (Rec. Doc. 32) and a Motion for Summary Judgment filed on behalf of Toys"R" Us, Inc. (Rec. Doc. 39). Oral argument was waived by the parties and the motions were taken under submission on the briefs. The Court, having considered the arguments of the parties, the Court record, the law and applicable jurisprudence, is fully advised in the premises and ready to rule.

**I      BACKGROUND**

On August 29, 2005, Hurricane Katrina, and its aftereffects, damaged the Toys "R" Us ("Toys") retail store in Schwegmann Plaza East located in New Orleans East. Thereafter, Toys cleared out the building and discontinued payment of rent. Schwegmann Trust No. 2, successor in title to Schwegmann Giant Supermarkets (Schwegmann "), as landlord, made demand upon Toys to honor the commitments of the lease, which was refused. Schwegmann filed suit against Toys, who, in responsive pleadings, have denied liability and filed a counterclaim against

Schwegmann citing the terms of the lease in support of their abandonment.  In turn, Schwegmann 2 responded to the counterclaim, reavering its demand that Toys repair the building, and bear responsibility for past due and future rents, as well as real estate taxes and related charges, and attorney's fees and costs.

Toys filed a Third Party Claim against the mortgagee, John Hancock Life Insurance Company, who has admitted its status and jurisdiction, but otherwise denied any direct connection with the issues before the Court except in its interest in the mortgaged properties and rent.

Indisputably, the executed lease is the controlling document and the basic issue before this Court is what responsibility, if any, Toys has under the specific provisions of this lease. According to the terms of the lease, the tenant is to pay rent and real estate taxes through a 25 year lease term, with multiple five year options to renew.  (Exhibit A to Schwegmann's Motion for Summary Judgment, Rec. Doc. 32.)  Further, the lease states that all improvements constructed shall be at the and shall become the property of the landlord upon termination of th lease.  *Id.*  In addition, the lease provides that the tenant shall maintain and make repairs to the tenant's building in good order and condition.  *Id.*

Article 11 of the lease provides that the defendant shall provide and cause to be maintained:

> a. Comprehensive general liability insurance with a minimum protection of $3 million, as well as $500,000 for property damage with a $5 million umbrella policy.
>
> b. Property insurance against loss of damage by fire and such other risks to

> tenant's building as are customarily included in so called "extended coverage endorsements (with provisions for deductible of not more than $1 million) in an amount equal to the full replacement of the value of tenant's building and the improvements exclusive of the cost of foundations, excavations and footing and not subject to depreciation, with a deductible of not more than $50,000.

Arguing that the lease unequivocally supports their argument that Toys is fully obligated to honor the terms of the lease, Schwegmann moves for summary judgment on the merits of the case, leaving only the issue of damages to be either determined by the Court or amicably by the parties. (Rec. Doc. 32, p. 2.) Toys's motion for summary judgment, on the other hand, requests that the Court declare the lease at issue dissolved and find no further obligations on the part of either the landlord or the tenant. (Rec. Doc. 39, p. 20.)

## II.   LAW

### A.   Summary Judgment Standard

Fed. R. Civ. P. 56(c) states that summary judgment is the proper remedy if no genuine issue to any material fact exists, and the moving party is entitled to judgment as a matter of law. A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The alleged existence of a factual dispute does not defeat an otherwise properly supported motion. Therefore, if the evidence is "merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.*, at 249-50.

Summary judgment is also proper if the party opposing the motion fails to establish an essential element of the case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-3 (1986). The non-

moving party must do more than simply deny the facts and legal claims raised by the moving party. Rather, the party must come forward with competent evidence, such as affidavits or depositions, to challenge the claims. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 585-6 (1986). Nevertheless, in evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255.

### B. ANALYSIS

The issue before this Court is the enforceability of the lease between Schwegmann and Toys in the aftermath of Hurricane Katrina. Toys argues that it is entitled to dissolution of the lease under Louisiana Civil Code Article 2715 because their use under the lease is substantially impaired.

Louisiana Civil Code Article 2715 provides:

> If, without the fault of the Lessee, the thing is partially destroyed, lost or expropriated, or its use is otherwise substantially impaired, the lessee may, according to the circumstances of both parties, obtain a diminution of the rent or dissolution of the lease, whichever is more appropriate under the circumstances. If the lessor was at fault, the lessee may also demand damages.
>
> If the impairment of the use of the leased thing was caused by circumstances external to the leased thing, the lessee is entitled to a dissolution of the lease, but is not entitled to diminution of the rent.

Schwegmann argues that the provisions of the lease entered into by both parties are controlling and specifically delineate and define the obligations of the landlord and tenant in the event of a casualty causing damage to property.

Under Louisiana law, the rules of the Civil Code "become applicable for filling any gaps in the parties' agreement and for determining its overall validity and effectiveness." La. Civ. Code art. 2668 cmt. (e).

The Louisiana Supreme Court has held:

> [T]he codal articles and statutes defining the rights and obliations (sic) of lessors and lessees are not prohibitory laws which are unalterable by contractual agreement, but are simply intended to regulate the relationship between lessor and lessee when there is no contractual stipulation imposed in the lease. All things that are not forbidden by law may become the subject of or the motive for contracts and, when legally entered into, the contracts have the effect of law between the parties who have made them. Our jurisprudence is that the usual warranties and obligations imposed under the codal articles and statutes dealing with lease may be waived or otherwise provided for by contractual agreement of the parties as long as such waiver or renunciation does not affect the rights of others and is not contrary to the public good.

*Tassin v. Slidell Mini Storage, Inc.,* 396 So.2d 1261, 1264 (La. 1981) (internal citations omitted).

In *Schwegmann Family Trust No.2 v. KFC National Management Company, et al*, KFC argued that its leased properties were "substantially impaired such that the properties were no longer fit for the express intended use of operating a Kentucky Fried Chicken restaurant" due to the effects of Hurricane Katrina. *Schwegmann Family Trust No.2 v. KFC National Management Company, et al*, 2007 WL 60971 (E.D. La. 2007). As Toys has in the instant case, KFC sought dissolution of its lease with Schwegmann via Article 2715. The Court, guided by the Comments to Article 2714, analyzed the role of Article 2715 as a gap-filler provision.

The Court noted that while Article 2715 deals with situations of partial destruction and substantial impairment, Article 2714 addresses situations where the object of the lease is totally

5

destroyed. *Id.* at 3. Where such total destruction occurs, Article 2714 provides for the automatic termination of the lease. *Id.*(citing La. Civ. Code Art. 2714). However, the Comments to the Article provide that the "parties may prevent such termination by inserting appropriate clauses in the least contract." *Id.*(citing La. Civ. Code art. 2714 cmt. (e)). Supported by *Cerniglia v. Napoli*, 517 So.2d 1209 (La. Ap. 4 Cir. 1987), the Court ruled that Schwegmann's lease with KFC trumped Article 2715.

In *Cerniglia*, the leased premises were destroyed by fire but the lease contained a fire clause providing for reconstruction and continuation of the lease under certain circumstances. *Cerniglia v. Napoli*, 517 So.2d 1209 (La. Ap. 4 Cir. 1987) The Court held that the lessee could not rely on Article 2697, the predecessor to Article 2714, finding that the codal article's provision for lease termination in the event of total destruction of the leased thing "is applicable only where there is no lease agreement to the contrary." *Id.* at 1211 (citing *Paul v. Adams*, 338 So. 2d 968 (La. Ct. App. 4th Cir. 1976)).

While the Civil Code has no similar comment for Article 2715, the underlying principle that the codal article's protection may be waived is equally applicable to cases of partial destruction covered by Article 2715 as it is for cases of total destruction under Article 2714. *Schwegmann Family Trust No.2 v. KFC,* *3 . Since Louisiana law permits the parties to contractually agree to continue a lease despite total destruction of the leased thing, it would be illogical for the law to preclude the parties from doing the same in the case of partial destruction or substantial impairment. *Id*. The general role of the Civil Code as a gap-filler to lease contracts, as described in Comment (e) to Article 2668 and the Louisiana Supreme Court's

holding in *Tassin*, supports this conclusion. *Id.* Therefore, the Court held that, as the lease agreements did address the damage caused by Hurricane Katrina, then the lease provisions, not Article 2715, apply.

In the instant case, Section 12 of the lease agreement between Toys and Schwegmann, entitled "Damage and Destruction," governs the course of action to be taken when a building on the leased property is damaged by "fire or other casualty" and provides, "In the event the whole or any part of the Demised Premises shall, during the Lease Term, be deemed or destroyed by a fire other casualty..., Tenant shall...commence and proceed with due diligence to repair, restore and/or build the Demise Premises, or portions thereof, substantially to their condition and character immediately prior to such damage..." (Exhibit B, Schwegmann's Motion for Summary Judgment.) This Court finds, as did the Court in *Schwegmann Family Trust No.2 v. KFC,* that the foregoing obligation constitutes an unequivocal responsibility if the property is damaged by any casualty, including Hurricane Katrina. Accordingly, the lease provision, not Article 2715, apply.

Toys "R" Us argues that the leases in *Schwegmann Family Trust No.2 v. KFC National Management Company, et al* are not analogous to the lease agreement before the Court in this matter for several reasons. First, Toys contends that the lease agreements in KFC are specifically designated as "Land Lease Agreements" and are only for the purpose of providing the tenant land to build a structure and the lease agreement at issue provided not only land to Toys, but also access to a shopping center, parking lot and sidewalks. Toys also states that they are not arguing that their Lease should be dissolved based on destruction of the leased building,

as the tenants did in *Cerniglia* and *KFC*, rather, they submit their Lease should be dissolved based on destruction of the leased premises.  This Court finds that the distinctions noted by Toys do not alter their obligation under the provisions of the lease requiring them to "proceed with due diligence to repair, restore and/or build the Demise Premises, or portions thereof, substantially to their condition and character immediately prior to such damage..."

Further arguing that KFC is distinguishable from the case at hand, Toys notes that the leases in that case did not provide for destruction for Acts of God and, as such, the Court, relying on the IRS Code, included a hurricane in discerning the meaning of "fire or other casualty."  On the other hand, Toys argues that the lease at issue provides for "Act of God" and "weather" as separate from "fire and other casualty," but does not provide for "Acts of God" and "weather" under Article 12, dealing with Damage and Destruction.  Accordingly, Toys asserts that interpreting "fire and other casualty" as inclusive of hurricanes in this case would be in direct contradiction to Louisiana law.   The Court finds this argument to be without merit.  Article 17 of the lease does provide for a respite period until an Act or God or other "unavoidable delays" are remedied.  However, the Court finds that the obligation set forth in Article 12.02 contemplates <u>any</u> casualty and is not premised on whether the "other casualty" is an Act of God, major or minor in nature.  While recognizing that the effects of Hurricane Katrina were disastrous, this Court finds that Toys "R" Us bound itself by the terms of the agreement it entered into with Schwegmann and the terms of this lease control and Schwegman is entitled to a granting of summary judgment on its behalf.

In addition, Section 31-11 of the Lease Agreement provides:

> In the event of a dispute between landlord and tenant, the prevailing party, upon final determination of the court or the forum having jurisdiction, shall be entitled to be reimbursed for its reasonable attorneys' fees and court costs incurred as a result of such dispute.

In accordance with the lease, this Court awards attorney's fees and costs to Schwegmann. If the parties cannot amicably agree to an amount, this aspect of this case shall be referred to the Magistrate Judge for resolution.

For the foregoing reasons**,**

**IT IS ORDERED** that the Motion for Summary Judgment filed on behalf of Schwegmann (Rec. Doc. 32) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment filed on behalf of Toys "R" Us (Rec. Doc. 39) is **DENIED**.

New Orleans, Louisiana, this 17th day of March, 2008.

_____
**G. THOMAS PORTEOUS, JR.**
**UNITED STATES DISTRICT JUDGE**